Arthur Murray v. Commissioner. Arthur Murray and Etta E. Murray v. Commissioner.Murray v. CommissionerDocket Nos. 52411, 52412.United States Tax CourtT.C. Memo 1956-31; 1956 Tax Ct. Memo LEXIS 266; 15 T.C.M. (CCH) 141; T.C.M. (RIA) 56031; February 9, 1956*266 On the facts, held: (1) That petitioner and his wife were not partners in commodity futures trading done by petitioner, Arthur Murray, in 1946. (2) That alleged traveling expenses deducted in the returns for 1946, 1947, and 1948, are not deductible, and that they are personal expenses. (3) That $1,625, a bank deposit in 1947, was unreported income of Arthur Murray. (4) The amounts of deductible charitable contributions for 1946, 1947, and 1948, in excess of deductions allowed, are determined. (5) Part of the deficiency for 1946 was due to fraud with intent to evade tax under section 293(b) of the 1939 Code. E. Charles Eichenbaum, Esq., Boyle Building, Little Rock, Ark., and W. S. Miller, Jr., Esq., for the petitioners. Lester R. Uretz, *267 Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined deficiencies in income tax for 1946, 1947, and 1948 and a 50 per cent addition to the deficiency for 1946 under section 293(b) of the Code as follows: AdditionDockettoNo.PetitionerYearDeficiencyDeficiency52411A. Murray1946$43,135.89$21,567.9519471,622.16052412A. MurrayandE. Murray1948478.700The issues to be decided are as follows: (1) Whether petitioner and his wife engaged in trading in commodity futures as partners or joint venturers in 1946. (2) Whether petitioners are entitled to deductions for alleged traveling expenses in 1946, 1947, and 1948. (3) Whether petitioners are entitled to additional deductions for charitable contributions in 1946, 1947, and 1948, in excess of the deductions allowed by respondent. (4) Whether petitioner, Arthur Murray, received income in the amount of $1,625 in 1947 which he failed to report. (5) Whether any part of the deficiency for 1946 was due to fraud with intent to evade tax. Findings of Fact The stipulated facts are*268 found according to the stipulation. The stipulation is incorporated herein by this reference. Petitioners, husband and wife, are residents of Memphis, Tennessee. They each filed separate returns for 1946 and 1947; a joint return was filed for 1948. The returns were filed with the collector for the district of Tennessee. The issues relate principally to Arthur Murray. He is referred to hereinafter as the petitioner. Petitioner, Arthur Murray, had no education beyond the third grade. He began to earn his living when he was about 12 years old. He has been engaged in the landscaping and construction businesses for many years. During 1946, 1947, and 1948, he was president of the Arthur Murray Company and the Murray Construction Company. The Arthur Murray Company operates a florist, nursery, and landscaping business. The Murray Construction Company does grading, drainage and sewage construction work. Since 1933, and during the taxable years, Etta E. Murray, petitioner's wife, has been employed by both companies. During the taxable years she was the secretary-treasurer of both corporations. Arthur Murray, in his returns for 1946 and 1947 reported no income from these two corporations. *269 Sometime in 1944, the petitioner began speculating in cotton futures. All of his commodity transactions were handled by two brokerage firms, Orvis Brothers & Co., and W. E. Richmond & Co. The account with Orvis Brothers was closed in the middle of 1946, on about July 19, 1946. The petitioners maintained a joint checking account in the North Memphis Branch of the Union Planters National Bank in the years 1944-1948, inclusive. A portion of their salaries and savings during those years were deposited in the joint account. As is stated hereinafter, Arthur Murray maintained an individual checking account during 1946 and 1947 in the Union Planters National Bank. Purchases and sales of cotton futures made in the name of the petitioner during the period June 23, 1945 to July 16, 1946, and the gains or losses resulting therefrom during the taxable year ended December 31, 1946 were as follows: AccountDate SoldGain or LossW. E. Richmond & Co.2- 9-46$ 3,260.00W. E. Richmond & Co.2- 9-463,250.00W. E. Richmond & Co.4- 3-4610,590.00W. E. Richmond & Co.4-24-463,145.00W. E. Richmond & Co.5- 6-46(625.00)W. E. Richmond & Co.6-24-464,335.00W. E. Richmond & Co.6-24-464,315.00W. E. Richmond & Co.6-24-464,265.00W. E. Richmond & Co.7- 8-46679.50W. E. Richmond & Co.7- 8-46779.50W. E. Richmond & Co.7-12-462,913.33W. E. Richmond & Co.7-12-461,503.33W. E. Richmond & Co.7-12-461,528.34W. E. Richmond & Co.7-15-4610,850.00W. E. Richmond & Co.7-15-4611,040.00W. E. Richmond & Co.7-16-46490.00W. E. Richmond & Co.8- 8-463,450.00W. E. Richmond & Co.8- 8-46662.50W. E. Richmond & Co.10-15-4618,340.00Orvis Bros. & Co.2- 9-461,622.50Orvis Bros. & Co.2- 9-464,852.50Orvis Bros. & Co.4-24-463,815.00Orvis Bros. & Co.4-24-463,825.00Orvis Bros. & Co.7- 8-46420.00Orvis Bros. & Co.7- 8-46425.00Orvis Bros. & Co.7-15-4622,060.00Orvis Bros. & Co.7-12-46(220.00)Orvis Bros. & Co.7-16-46280.00*270 The total amount of the long-term capital gains which petitioner realized during 1946 in his accounts with W. E. Richmond & Co., and Orvis Bros. & Co. were as follows: Long-term Capital gainRichmond$38,990Orvis28,535Total$67,52550%$33,762.50The total amount of the short-term capital gains and losses, and the total net amount of the short-term capital gains realized by petitioner in 1946 in petitioner's accounts with Richmond Co. and Orvis Bros. were as follows: Short-term Capital gainRichmond gains$46,406.50losses625.00Net gain$45,781.50Orvis gains$ 8,765.00losses220.00Net gain$ 8,545.00Total net short-termgain$54,326.50Petitioner's total capital gains in 1946, before computing the taxable amounts thereof, amounted to $121,851.50. Of this sum, the total taxable long-term gains amounted to $33,762.50, and the total taxable short-term gains amounted to $54,326.50. Accordingly, the total amount of petitioner's taxable gain from his transactions in commodity futures amounted to $88,089, of which amount petitioner reported only $14,762.50, and he failed to report in his income tax return taxable*271 gain in the amount of $73,326.50. In 1947, petitioner realized from his transactions in commodities net short-term capital gain in the amount of $11,440. He realized net long-term capital gain in the amount of $14,915, of which $7,457.50 was taxable. He correctly reported these amounts of capital gain in his return for 1947. In 1948, petitioner realized from his transactions in commodities, net short-term capital gains in the amount of $6,154. He realized net long-term capital gains in the amount of $2,330 of which the taxable gain was $1,165. Petitioner's total taxable capital gain for 1948 was $7,319. He correctly reported capital gain in his return for 1948. Petitioner made the following deposits to and withdrawals from his brokerage account with W. E. Richmond & Co. during 1946: DateDepositsWithdrawals2-9-46$ 8,510.004- 4-4612,590.004-25-463,145.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,290.007-29-46$14,000.0010-16-4640,000.0010-29-4625,000.0011- 8-467,500.00$46,500.00$76,535.00Excess of withdrawals overdeposits$30,035.00Petitioner made the following deposits to and withdrawals from his brokerage account with Orvis Brothers*272 & Co. during 1946: DateDepositsWithdrawals2-11-46$12,000.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,815.005- 3-46$1,040.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,305.00$1,040.00$40,120.00Excess of withdrawals overdeposits$39,080.00The total amount of petitioner's withdrawals over and above deposits, in 1946, amounted to $69,115. During the years 1946 and 1947, petitioner maintained an individual checking account in the Union Planters National Bank and Trust Company, Memphis, Tennessee. He was the only one who was authorized to draw checks on that account. During the year 1946, all payments by petitioner to W. E. Richmond & Co. and to Orvis Brothers & Co. to meet margin requirements were by check drawn on his individual checking account, and all sums of money which he withdrew from his commodity accounts were deposited in his individual checking account. The accounts with Richmond and Orvis were in petitioner's own name, Arthur Murray. They were not in the name of petitioner and his wife. In his individual income tax return for the year 1946, the petitioner reported longterm capital gains from commodity transactions with W. E. Richmond & Co. in the total amount of $29,525. Petitioner*273 purportedly arrived at this amount by subtracting the total amount of his deposits to his commodity account with W. E. Richmond & Co. in 1946, namely, $46,500, from all withdrawals made from that account in 1946. Petitioner erroneously computed the withdrawals as $76,025, and in this way arrived at the figure $29,525. In fact, his total withdrawals amounted to $76,535, and the excess over deposits was $30,035. Petitioner did not report any short-term capital gains from his commodity transactions with W. E. Richmond & Co. in his individual income tax return for the year 1946. The petitioner in his individual income tax return for the year 1946 did not report any capital gains from his commodity transactions with Orvis Brothers & Co., although he realized long-term and short-term capital gains in this account in 1946. Roy M. Scott, a certified public accountant and attorney, prepared petitioner's individual income tax returns for the years 1946 and 1947, and the individual income tax return of petitioner, Etta E. Murray, for the year 1946. Petitioner never informed Scott that the petitioner and his wife were joint venturers or partners in commodity futures transactions. Petitioner's*274 1946 individual income tax return was prepared by Scott largely from figures given to him by the petitioner over the telephone. Scott was not furnished any books, records, cancelled checks, or brokers' statements relating to petitioner's commodity transactions, or to his alleged business expenses, or charitable contributions. Petitioner merely telephoned Scott and gave him figures, and told him that he had realized long-term capital gains from commodity transactions totaling $29,525, had made charitable contributions totaling $2,545, and had incurred traveling expenses totaling $2,315.16. Sometime between October 15, 1946 and December 31, 1946, petitioner received from Richmond a duplicate copy of his commodity sales from January 1, 1946 to October 15, 1946. This statement showed the purchase and sale dates for each item sold and the gain or loss on each sale, listing the total gain for the period as $85,396.50, and the total loss as $625. Richmond sent petitioner a form letter, dated August 24, 1946, on which gain and loss totals as of August 8, 1946 were typed. The letter contained the following statements: "Pursuant to your request, we have checked your commodity account with*275 us and find the following profit and loss results for the calendar year to and including Aug. 8th, 1946. "Short Term Gains$28,066.50Short Term Losses625.00NET Short Term Gain$27,441.50Long Term Gains$38,990.00Long Term Losses.00NET Long Term Gain$38,990.00"The phrase 'Short Term' applies to gains and losses from contracts held not more than six months and 'Long Term' to those held more than six months. "These items should be entered on Schedule D of form 1040 of your tax return, to which your attention is invited." After receiving the above report, petitioner requested another statement and he received a statement showing all his 1946 transactions and gains. As is the custom in the commodity brokerage business, the petitioner received individual transaction slips from his commodity brokers after each commodity trade, setting forth the details of the particular transaction. Individual transaction slips relating to all of petitioner's commodity transactions in 1946 were in his custody and possession at the time his 1946 individual income tax return was prepared. In addition to individual transaction slips, the petitioner in 1946 received*276 monthly statements and year-end statements from his brokers summarizing all commodity trades made by him during the year, deposits to and withdrawals from his account, and the balance, if any, remaining in his accounts at the end of the year. Petitioner reviewed his brokers' statements when he received them in 1946. He knew what they reflected. Scott determined petitioner's commodity transaction gains in 1947 from brokers' statements furnished him by the petitioner. All gains from the purchase and sale of commodity futures by the petitioner during 1947 were properly included in his 1947 individual income tax return. Petitioner, Etta E. Murray, has never speculated in the commodity market, knows nothing about the buying or selling of commodity futures, and she reported no gain or loss from commodity transactions in her individual income tax return for the year 1946. During the year 1946, petitioners were equal partners in the operation of a building known as the Merchandise Brokers Building. A 1946 partnership income tax return respecting the Merchandise Brokers Building was prepared, and the petitioners in their individual income tax returns for 1946 each reported a pro-rata*277 share of the gain from the partnership. Petitioner traveled to New York City; Washington, D.C.; Hot Springs, Arkansas; Daytona Beach, Florida; New Orleans, Louisiana; and several other cities during the taxable years. His travels had no connection with his nursery or construction businesses, or with his commodity transactions. In his individual income tax returns for the taxable years 1946 and 1947, the petitioner deducted traveling expenses in the amounts of $2,315.16 and $1,845, respectively. In their joint income tax return for 1948, the petitioners deducted traveling expenses in the amount of $2,100. Petitioner did not keep records of his alleged traveling expense for any of the taxable years except for a few hotel bills which he paid on a trip to New York in 1946. The respondent in his statutory notices of deficiency disallowed the entire amounts deducted as traveling expenses by the petitioner in his individual income tax returns for 1946 and 1947, and by the petitioner and his wife in their joint income tax return for 1948. In his individual income tax return for 1946, petitioner deducted $2,545 as charitable contributions. Of this amount, $2,312.50 represents alleged*278 estimated cash contributions to various charitable and religious organizations. In his individual income tax return for 1947, petitioner deducted $1,570 as charitable contributions. Of this amount $736.24 represents alleged estimated cash contributions to various charitable and religious organizations. In their joint income tax return for 1948, petitioners deducted $650 as charitable contributions. Of this amount, $520 represents alleged estimated cash contributions to various charitable and religious organizations. The respondent, in his statutory notices of deficiency, disallowed deductions for contributions for 1946 and 1947 in the respective amounts of $2,312.50 and $736.24; and he disallowed contributions for 1948 in the amount of $520. The petitioners made contributions to charitable and religious organizations in 1946, 1947, and 1948, in the amounts of $500, $200, and $300, respectively, in addition to the amounts of the deductions for charitable contributions which the respondent has allowed. On November 5, 1947, petitioner deposited $1,625 in his individual checking account at the Union Planters National Bank, Memphis, Tennessee. This sum constituted taxable income*279 of the petitioner. The petitioner, in 1946, or before, or after, did not in good faith and acting with a business purpose enter into a joint venture or partnership with his wife for the purpose of trading in commodity futures. The petitioner and his wife were not members of a bona fide partnership or joint venture during 1946 which was engaged in commodity transactions. The trading accounts of Arthur Murray, in 1946, with Orvis Brothers & Co., and with W. E. Richmond & Co. were his individual trading accounts; they were in his own name; they were not trading accounts of a partnership or a joint venture consisting of petitioner and his wife. Part of the deficiency for 1946 was due to fraud with intent to evade tax. Opinion Issue 1: There are several fact questions relating to unsubstantiated deductions for alleged traveling expenses and charitable contributions with respect to which the petitioner had the burden of proof. The findings dispose of these issues. It is not necessary to discuss them at length. In the returns for 1946, 1947, and 1948, deductions were taken for traveling expenses in the amounts of $2,315.16, $1,845, and $2,100, respectively. The respondent disallowed*280 the deductions in their entirety. The provisions of sections 23(a)(1)(A) and 23(a)(2) govern the claimed deductions. The petitioner was unable to establish that any of the traveling expenses were incurred in connection with his commodity transactions, or that they were ordinary and necessary business expenses, or that they were paid or incurred in the taxable years for the production of income, or for any of the other purposes prescribed in section 23(a)(2). Furthermore, aside from a few hotel bills, petitioner did not make and retain records of the alleged traveling expenses. The amounts of the deductions claimed include estimates. Petitioner relies solely on his own self-serving and uncorroborated recollections and statements. Petitioner has failed to prove either the amounts of the alleged traveling expenses, or that they come within the conditions prescribed in sections 23(a)(1)(A) and (2) of the 1939 Code. Respondent's disallowances of the claimed deductions are sustained. With respect to charitable and religious contributions in each of the taxable years, the evidence is not wholly satisfactory. However, some of the testimony is accepted as establishing that contributions*281 were made in each taxable year in excess of the amount of the deduction which the respondent allowed in each year. Bearing heavily against the petitioners for the inexactitude which is their own, it has been found that in each year deductible contributions were made in an amount which is in addition to the deduction allowed. . Issue 2: The respondent has determined that an unexplained bank deposit made by petitioner on November 5, 1947, in the amount of $1,625 represents taxable income. This determination must be sustained for petitioner's failure to prove that it was not taxable income. Petitioner attempted to explain the item as the return of a cashier's or certified check purchased by him from the Union Planters National Bank which he had put up as a bid on a construction job and which was returned to him when his bid was rejected. There is nothing in the record to corroborate petitioner's self-serving testimony which falls short of the required proof. Issue 3: The next question is whether petitioner and his wife were partners or joint venturers in commodity futures transactions in the taxable year 1946, only. The petitioner*282 does not contend that he and his wife, in 1947 or 1948, made commodity transactions as partners or joint vneturers. The petitioner concedes that the respondent has computed correctly the amounts of his long-term and short-term capital gains in 1946 from commodity transactions, and that he failed to report all of these capital gains in his return for 1946. Upon consideration of all of the evidence and of the applicable rules of law, it is found and concluded that petitioner and his wife were neither partners nor joint venturers in commodity transactions in 1946. Consideration has been given to the tests set forth in , and . There is no clear and convincing evidence that petitioner and his wife entered into any oral agreement to carry on a commodity trading operation as partners or joint venturers, or that petitioner's wife actually made contributions of capital to such operations. She contributed no services. The conduct of the parties belies the existence of a partnership or joint venture in 1946. No partnership return, relating to commodity transactions, was filed for 1946, or for*283 any other year. In 1946, petitioner was the only individual who reported any of the gains which were realized. The petitioner exercised complete dominion and control over the operations and the gains derived therefrom. Under all of the facts and circumstances we are unable to find and hold that petitioner and his wife did "in good faith" and "acting with a business purpose" really and truly intend "to join together in the present conduct" of a partnership or joint venture. It is held that petitioner is taxable on the entire taxable gain realized in 1946 and 1947 from commodity transactions. Issue 4: The Commissioner has determined that part of the deficiency for 1946 was due to fraud with intent to evade tax under section 293(b). Under this issue he has the burden of proving fraud by clear and convincing evidence. ; , affd. . The facts are not in dispute. The records of the two brokerage firms where petitioner had accounts in 1946 show the amounts of his gains and losses, and petitioner has entered into a stipulation*284 by which he agrees that his total taxable gains in 1946 amounted to $88,089. The record shows that petitioner received statements of his gains and losses from his brokers in 1946; that total net gains were realized in the amount of $121,851.50; that of this sum, $88,089 constituted taxable capital gain; that petitioner reported only longterm capital gain in his 1946 return; that he reported only about one-third thereof, or $29,525, of which $14,762.50 was taxable gain; that he reported no short-term capital gain. In explanation of his large understatement of his entire capital gains, and of his taxable capital gains, which he understated to the extent of $73,326.50, petitioner has offered a patently weak and lame explanation, namely, that he considered his taxable gain to be the difference between his withdrawals and his deposits in the Richmond Company account; that he forgot about his account with Orvis; and that he forgot the gains reported to him by Orvis Brothers. Consideration has been given to all of the circumstances stated by petitioner, including his very limited education and his lack of previous experience in dealing in commodity futures but these factors do not outweigh*285 serious circumstances which are obvious. Petitioner has been engaged in the conduct of business operations for over 25 years. He did not present to the Court any indication that he did not understand the meaning of profit and of loss. Petitioner carried on trading in commodity futures before and during the taxable years. Petitioner has failed to explain satisfactorily to this Court why in his return for 1946, the year in which he realized very substantial capital gains, he grossly understated the true amount of his capital gains and failed to report all of the gains which he realized. He reported total net capital gains in the amount of only $29,525 which represented about one-fourth, only, of his entire net capital gains. The understatement is very large. Petitioner used the services of an accountant in the preparation of his 1946 return but he withheld from his accountant brokerage slips, statements, and all of the evidence of his actual and true profits. Petitioner failed to report in his 1946 return any short-term capital gain all of which is taxable, even though he realized short-term capital gain in the amount of $54,326.50, most of which was made in his transactions which*286 the Richmond Company handled. Upon careful and thorough consideration of the entire record, it is found and concluded that part of the deficiency for 1946 was due to fraud with intent to evade tax under section 293(b). Our credulity is too greatly strained to conclude that so great a discrepancy between the actual capital gains for 1946 and the amount of gain which petitioner reported was due to negligence, neglect, and innocent mistake, only. See . The addition of 50 per cent to the deficiency for 1946 is sustained. In view of other holdings made herein, it may be necessary for further adjustments to be made of the amount of the allowable medical expense deduction under section 23(x). If so, that may be done under Rule 50. Decisions will be entered under Rule 50.